

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00528-CV

**IN THE INTEREST OF C.F.S.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02140
Honorable H. Paul Canales, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  November 13, 2013

AFFIRMED

This is an appeal from a trial court's order terminating appellant R.S.'s parental rights to his child, C.F.S. On appeal, R.S. contends the evidence is legally and factually insufficient to support the trial court's determination that termination was in the child's best interest. We affirm the trial court's judgment.

### Standard of Review

Parental rights are terminable only upon proof by clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). Clear and convincing evidence

is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see also In re J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is mandated by due process because termination results in permanent and unalterable changes for both parent and child. *E.A.G.*, 373 S.W.3d at 140. Under the clear and convincing standard, the appellate court asks whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

In evaluating the evidence for legal sufficiency in parental termination cases, evidence is reviewed in the light most favorable to the finding and judgment. *Id.* Any disputed facts are resolved in favor of the finding, if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the province of the trier of fact. *Id.* at 573–74. And, even when credibility issues appear in the appellate record, we defer to the trier of fact's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and must refrain from supplanting the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding,

then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

### *Law on Best Interest*

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). It is well-established that the primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar *Holley* factors, which include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive and need not all be proved as a condition precedent to termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence about some of the *Holley* factors would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, while it is true that proof of acts or omissions under section 161.001(1) of the Texas

Family Code does not relieve the Texas Department of Family and Protective Services ("the Department") from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

### *Application*

R.S. was the first witness to testify. R.S. stated that when the Department first became involved with C.F.S., he was not incarcerated, but was "out on bond." Ultimately, he accepted a plea bargain with regard to the charge of felon in possession of a firearm. R.S. has a total of three felony convictions, one of which was theft of a firearm, and admitted to other offenses committed as a juvenile.

As a result of the plea agreement on his current felony charge, R.S. testified he was currently incarcerated, he appeared at the trial telephonically, but hoped to be released soon on parole. However, he admitted that if he was not granted parole, he would not be released until March of 2016. R.S. testified that while he is in prison, there was "no possible way" he could care for his daughter. R.S. told the court he loves his daughter and wants to maintain his parental rights, but agreed that if he was not released until 2016, he would not want the child to remain in the foster care system. Rather, he would want her to be with a family member. R.S. stated he knew from the child's caseworker that she was doing well in her current placement with her great grandmother. He testified he loves his daughter and knows he has made mistakes, but intends to do anything he can, once he is released, to retain his parental rights.

With regard to the service plan, R.S. admitted he signed it and stated that while he was out on bond, he attempted to complete some of the requirements. However, he could not enter an inpatient treatment center for his alcohol issues because his trial was pending, but he did meet once with a counselor. R.S. testified he tried to enroll in parenting classes, but given the pending trial,

it did not work out. R.S. denied ever testing positive for drugs. The dates of the Department's involvement and R.S.'s subsequent incarceration establish he had approximately six months to work on the service plan, but he failed to complete almost all of the required services. In fact, according to R.S. the only actions he took during this six-month period was one meeting with a counselor and an inquiry about alcohol treatment.

The next witness to testify was Elizabeth Tefteller, a "conservatorship worker" with Child Protective Services. She stated she prepared a service plan for R.S., and he agreed to complete the services. During the six months before he was incarcerated, she said he completed an evaluation and based on that evaluation, she recommended services at a treatment center in Seguin. Tefteller stated R.S. never told her why he was unable to obtain the services from the treatment center, and the only other item on his service plan that R.S. worked on was counseling–he attended a single session. According to Tefteller, R.S. had at least three months before his incarceration in which he could have attended additional counseling sessions, but he "just quit showing up." Tefteller testified that in January of 2013, she began having trouble contacting R.S. — this too was before he was incarcerated in March 2013.

Tefteller testified R.S. was permitted to visit C.F.S. After he missed "a couple of visits in December," she requested that he take a drug test. When R.S. failed to submit to the drug test, visitation was discontinued. R.S. did not provide Tefteller with "an exact reason" for failing to submit to the drug test, which was part of his service plan.

As for the child, Tefteller testified C.F.S. is one-year-old and currently resides with her maternal great grandmother. Tefteller told the court the great grandmother is meeting all of the child's needs, and based on her observation of the child in the home, the child has bonded with her great grandmother. Tefteller stated she believes termination was in the child's best interest — R.S. never completed his service plan and could be incarcerated for another three years.

At trial, R.S. never challenged or disputed the claims, which the trial court ultimately found to be true, that he had constructively abandoned C.F.S., failed to comply with the service plan, and knowingly engaged in criminal conduct that resulted in his conviction for an offense and confinement and inability to care for C.F.S. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (Q).

After considering the evidence, the *Holley* factors, the undisputed acts or omissions under section 161.001(1) of the Texas Family Code, and the applicable standards of review, we hold there is legally and factually sufficient evidence to support the trial court's determination that termination of R.S.'s parental rights was in C.F.S.'s best interest. Under the clear and convincing standard, we hold the evidence is such that the trial court could reasonably have formed a firm belief or conviction that termination was in the best interest of the child. *See In re J.P.B.*, 180 S.W.3d at 573.

### *Conclusion*

Accordingly, based on the foregoing, we overrule R.S.'s issues and affirm the trial court's judgment.

Marialyn Barnard, Justice